UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VICKI BONVILLAIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-60** |
| **TERREBONNE PARISH CONSOLIDATED GOVERNMENT ET AL** | **SECTION "L" (2)** |

## ORDER & REASONS

Pending before the Court is Defendant Terrebonne Parish Sheriff Deputy Michael Leone's ("Leone") motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Vicki Bonvillain's ("Bonvillain") claims against him for failure to state a claim upon which relief can be granted. R. Doc. 16. Bonvillain opposes the motion. R. Doc. 21. Having considered the briefing, record, and applicable law, the Court rules as follows.

I.  **BACKGROUND**

This case arises out of the death of Bonvillain's thirty-one-year-old son, Jonathon Verdin, on January 8, 2023. R. Doc. 1 at 4. Bonvillain is a Native American member of the Houma Tribe, as was her son. *Id.* at 2, 14. She describes her community involvement, local activism, and her past election to the Terrebonne Parish School Board, alleging that these facts made her and her family uniquely vulnerable to political targeting. *Id.* at 2-3. She claims that her son was "shot and killed during a traffic stop by a Terrebonne Parish Sheriff Deputy" and that the Sheriff Deputy (Leone), his boss Sheriff Timothy Soignet, Terrebonne Coroner Patrick Walker, Terrebonne Custodian of Records Mart Black, Houma Police Chief Travis Theriot, and former Houma Police Chief Dana Coleman covered up the homicide and reported instead that her son committed suicide. *Id.* at 2-4.

Bonvillain alleges many facts that support a finding of homicide as opposed to suicide, for

1

example that her son was shot twice in the chest, there were no gunpowder residue or marks near the skin indicative of a close range (self-inflicted) gunshot wound, her son was right-handed and his wounds would not be possible with a right-handed self-inflicted wound, her son had no criminal or mental health history nor is there any evidence he was suicidal leading up to his death, and that Leone gave inconsistent and contradictory statements about the shooting. *Id.* at 5-6. Additionally, she alleges that there were no bullet holes found in her son's truck nor any bullets found in his body or truck. *Id.* at 10-11. Further, Bonvillain claims that her son was quickly autopsied without her being notified of his death and without her consent to conduct the autopsy, so she was unable to see his body's condition upon death, and she alleges that Coroner Walker did not perform or assist with the autopsy yet declared the cause of death suicide the same day. *Id.* at 9-11.

Bonvillain also claims she sought records and information relating to her son's death, but that Custodian Black provided only partial Houma Police Department records. *Id.* at 8-9. She alleges that he did not produce the video from the pole camera that captured the shooting and the materials he did produce contained "obvious alterations" which were, she believes, designed to mislead her. *Id.* As to the pole camera footage, she alleges that she and three unnamed people obtained and watched it together, and that the time stamp on the video is substantially earlier than reported by the Houma Police Department. *Id.* at 2-3.

Bonvillain sued the Houma Police Chief and former Chief because they supervised the "sham investigation into the death" of her son, alleging that Chief Theriot pressured her to "participate in a press conference stating that her son had committed suicide" and that they thus have a role in the coverup. *Id.* at 6-7. Further, she alleges that former Chief Coleman, who was Chief at the time of the death, went on to work for Attorney General Landry and actively worked to stymy her attempts to elevate this matter above local law enforcement. *Id.* at 7.

Bonvillain sued the Terrebonne Parish Consolidated Government (as employer of the

2

sheriffs), Sheriff, Sheriff Deputy, Custodian of Records, Coroner, and the Houma Police Department Chief and former Chief asserting three causes of action under 42 U.S.C. § 1983: (1) a claim for deprivation of the life of her son; (2) a claim relating to the coverup of the alleged homicide; and (3) a claim alleging gender and racial discrimination, both against herself and her son, which she alleges tarnished the integrity of the investigation into his death. *Id.* at 12-15. She seeks various remedies, including compensatory and punitive monetary damages for the alleged homicide and coverup and a determination that homicide was in fact his cause of death. *Id.* at 16-17. Bonvillain also asserts that as her son was unmarried and without children, she is the proper party to seek survival action damages and wrongful death damages under Louisiana law. *Id.* at 12.

All Defendants except Sheriff Deputy Leone and Sheriff Soignet filed an answer together in which they generally deny Bonvillain's allegations and raise a number of affirmative defenses, including failure to state a claim upon which relief may be granted, time bars and prescription has run, and that they are entitled to qualified immunity. R. Doc. 9. Sheriff Soignet filed a separate answer which also denies her allegations and asserts affirmative defenses such as failure to state a claim and qualified immunity. R. Doc. 13. Deputy Sheriff Leone filed a 12(b)(6) motion in lieu of an answer. R. Doc. 16.

## II.  PRESENT MOTION

In Leone's 12(b)(6) motion to dismiss, he urges this Court to dismiss Bonvillain's claims against him because her allegations are merely conclusory and she does not allege specific facts as to Leone beyond accusing him of shooting her son. R. Doc. 16. He argues that the first count should be dismissed because the pole footage Bonvillain references in her complaint, and which he manually attached as an exhibit to his motion, shows that Leone did not approach Verdin's vehicle nor does it show that Leone fired shots at Verdin. R. Doc. 16-1 at 6-7. Rather, Leone alleges that it shows that he initiated the traffic stop and that Verdin opened his driver-side door.

3

Leone then "can be seen hunching over and scanning his surroundings, likely in reaction to the self-inflicted gunshots fired by Verdin," and then Leone gets back into his police car and drives away. *Id.*

As to counts two and three, Leone argues that Bonvillain barely mentions him or specific facts about his actions to constitute conspiracy or discrimination charges. *Id.* at 7-8. He argues she makes no factual assertions as to how or if Leone conspired to engage in a coverup, and that her complaint fails to make any allegations whatsoever as to how or if Leone discriminated against her or her son on gender or racial grounds. *Id.* He therefore urges the Court to dismiss her complaint against him.

In response, Bonvillain first asserts concerns with the authenticity of the pole camera footage Leone submitted with his motion and raises admissibility concerns on that basis. R. Doc. 21. Next, Bonvillain addresses it on the merits and notes that the footage itself implicates Leone and forecloses any qualified immunity defense because it plainly shows that he fled the scene of what he purports was a self-inflicted gunshot wound. *Id.* at 3. She argues that the facts she alleges in her complaint, which "stretch[] twenty three paragraphs (3-27) over eleven pages (2-12)" are more than conclusory and instead state the information she had at the time of filing suit. *Id.* at 4. She attaches six exhibits to her opposition memorandum including the autopsy report and photos, which she alleges support her position that her son was killed via homicide, and the narrative report from the response to her son's death, which demonstrate that Leone changed his story between that night and this suit, and which she argues indicates a coverup. *Id.* Bonvillain asks this Court that if it does find her complaint deficient, that she be allowed leave to amend, but she asserts that her facts pleaded are sufficient to withstand Leone's motion to dismiss. *Id.* at 4-5.

### III.   APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for

4

failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV. DISCUSSION

First, the Court notes that this motion is brought by Leone only and will not address the complaint's sufficiency against other named Defendants. Second, the Court viewed the pole footage attached to Leone's motion and referenced throughout Bonvillain's complaint. From the Court's perspective, the video raises more questions than it answers. If this was a self-inflicted gunshot wound – which this video does not clearly establish – then Leone's flight from the scene makes little sense. As a trained officer, one might assume he would stay and administer aid, or call for a medical team, or some other course of action besides getting in his car and driving away against traffic. That said, the video does not show that he shot the victim, nor does it show that the victim shot himself. In fact, the video appears to show the victim continuing to move about in the cab of his truck after Leone's flight. The Court therefore finds candor issues with Leone's motion and memorandum that appear to frame this video as exculpatory for him, but that is not dispositive

on his 12(b)(6) motion.

The Court finds Bonvillain's complaint sufficiently states facts that state a plausible claim for relief against Leone. The Court, as it must, takes the facts in the complaint as true in evaluating a 12(b)(6) motion. Accordingly, the fact that Bonvillain's son was shot twice raises questions about the cause of death being suicide. The video footage raises questions about Leone's actions in the aftermath of the alleged gunshots, and his flight from the scene gives this Court pause as to his entitlement to qualified immunity. The exhibits Bonvillain attaches show that Leone changed his story at various points in this investigation, which, in conjunction with the facts to be taken as true in her complaint, state a plausible claim for conspiracy to cover up the actions that led to her son's death. While the Court acknowledges that the complaint is sparse as to allegations of discrimination by Leone specifically against Bonvillain or her son, the Court observes that her complaint alleges that she heard racially charged language in videos produced to her and that she is unsure who uttered this language. At this stage of the litigation, these allegations must be considered true. The Court finds that this is just barely enough to survive Leone's 12(b)(6) motion, considering that at the complaint filing stage, discovery has not yet begun and Bonvillain does not have all of the facts that could support her alleged counts. The Court finds it pleads enough facts, just barely, at this stage.

Accordingly, for the foregoing reasons, Leone's 12(b)(6) motion is **DENIED**.

New Orleans, Louisiana, this 14th day of May, 2024.

_____
United States District Judge