UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **VICKI BONVILLAIN** | * | **CIVIL ACTION NO. 24-60** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| | * | |
| **TERREBONNE PARISH CONSOLIDATED** | * | **MAGISTRATE JUDGE** |
| **GOVERNMENT, ET AL.** | * | **DONNA PHILLIPS CURRAULT** |

\* \* \* \* \* \*

## ORDER & REASONS

Before the Court is a Motion for Reconsideration filed by Plaintiff Vicki Bonvillain ("Bonvillain") as to this Court's grant of three motions for summary judgment. R. Doc. 145. All Defendants filed oppositions. R. Docs. 148, 149, 151. Plaintiff replied. R. Doc. 153. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I.    BACKGROUND & PRESENT MOTION**

The Court assumes the parties are familiar with the factual background of the case and will not rehash the history in detail as this Court has in its prior orders and reasons. *E.g.*, R. Docs. 22, 135. In short, this case arose out of the death of Jonathon Verdin ("Verdin"), Plaintiff's thirty-one-year-old son. R. Doc. 1 at 4. Bonvillain claimed that Defendant Michael Leone ("Leone"), a Terrebonne Parish Sheriff's Officer, shot and killed Verdin during a traffic stop on January 8, 2023. *Id.* She brought a claim against Leone pursuant to 42 U.S.C. § 1983, alleging that he violated her son's constitutional right to life by killing him with a use of excessive force. *Id.* at 12. She brought a second § 1983 claim against Leone, as well as other law enforcement officers and Terrebonne Parish officials, asserting that they conspired to cover up that Leone killed her son. *Id.* at 12-14; R. Doc. 29 at 2-4. Bonvillain also brought several state law claims against the various defendants. R. Doc. 1 at 1, 9, and 17; R. Doc. 29 at 2-3.

1

The Court granted summary judgment in favor of Defendants on all of Plaintiff's claims. R. Doc. 135. The Order & Reasons detailed the facts presented to the Court on summary judgment and determined that Plaintiff had not submitted any evidence—be it forensic, expert, or testimony—that could allow this Court to find it plausible that Leone fired the weapon that killed Verdin. *See id.* at 7-19. In doing so, the ruling noted that the Court was "hesitant to accept that Verdin's cause of death was 'suicide.'" *Id.* at 18. The Court opined that his death "may have been accidental when [Verdin], in his inebriated state, tried to hide the weapon during the traffic stop and it unexpectedly fired." *Id.* at 18-19. But, after careful consideration of the competent summary judgment evidence—which included body camera footage, unrefuted testimony, unrefuted forensic testing, an unrefuted autopsy report, and more—this Court could not find that Plaintiff submitted any evidence to support her contention that Leone killed her son.

Bonvillain now requests reconsideration of this determination, arguing that the Court improperly credited what Bonvillain holds out to be disputed evidence that is relevant to the question of whether Leone shot her son. R. Doc. 145-1. She argues that the Court committed manifest injustice because it failed to acknowledge that certain evidence could substantiate her § 1983 excessive force claim, such as Deputy Guidry's alleged "observation that there were no shell casings on the floor board and the[] [shell casings'] subsequent appearance." *Id.* at 9. All Defendants opposed the motion, generally arguing that she is not entitled to reconsideration because her motion attempts to rehash evidence and legal theories this Court addressed in detail in its Order & Reasons. R. Docs. 148, 149, 151. Bonvillain replied to generally reassert her manifest injustice argument. R. Doc. 153.

II. **APPLICABLE LAW**

Rule 54 provides that district courts "possess[] the inherent procedural power to reconsider,

rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco*, 659 F.2d 551, 552 (5th Cir. 1981). Under such a standard, district courts can be "more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017). Relevant considerations when ruling on a Rule 54(b) motion include "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact." *Henry v. New Orleans La. Saints, L.L.C.*, No. 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016). Courts may also grant reconsideration when "necessary to prevent manifest injustice." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998). Importantly, motions for reconsideration are "not the proper vehicle[s] for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990)).

### III.  DISCUSSION

Bonvillain argues that it was a "manifest error of fact" for this Court to make credibility determinations as to Deputy Leone's testimony, the contents of surveillance footage, and the contents of the forensic testing. R. Doc. 145-1. She further argues that overall, it was manifestly unjust for this Court to grant Defendants' summary judgment motions. *Id.* The Court will first address whether it made credibility determinations at the summary judgment stage and will thereafter assess whether Bonvillain's arguments warrant the reconsideration of the entry of summary judgment against her on all claims.

#### A.  The Court Did Not Make Credibility Determinations.

The Federal Rules of Civil Procedure require courts to grant summary judgment when "the

movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). When the burden of proof at trial rests on the nonmovant, "'the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case.'" *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000)). This Court found that Defendants demonstrated an absence of evidentiary support in the record to allow the Court to draw the inference that Leone shot the gun that killed Verdin. *See generally* R. Doc. 135. This determination was not the result of the Court erroneously weighing the credibility of Defendants' evidence—instead, the Court observed a *lack* of evidence submitted by Plaintiff that, *inter alia*, would have (1) disputed whether the gun that fired the shots that killed Verdin was Verdin's own gun, (2) contradicted the surveillance footage to show Leone standing in front of Verdin at any point during the traffic stop, (3) countered the Louisiana State Police crime lab ballistics report about Verdin's weapon being the gun that made the markings on the shell casings found at the scene, and (4) opposed the findings of Dr. Vo's autopsy report. *Id.*

Defendants met their burden of demonstrating an absence of evidence that Leone killed Verdin. The burden then shifted to Bonvillain to "produce evidence of the existence of such an issue for trial." *Bayle*, 615 F.3d at 355. She failed to do so. Even if this Court were to "disregard all evidence favorable to the moving party that the jury is not required to believe," the Court would have been left with no testimony, expert reports, or other evidentiary submissions that could allow it to draw the inference that Leone fired the gun that shot Verdin. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010). "[W]e are not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are entirely unsupported, or supported by a mere scintilla of evidence." *Id.* Plaintiff's mere scintilla of evidence—the fact that Verdin suffered from two gunshot wounds—is not sufficient evidence to allow a reasonable jury

to infer that Leone shot Verdin at the traffic stop.[1]

### B. Bonvillain Is Not Entitled to Reconsideration.

Bonvillain has not met any of the three factors that would otherwise justify reconsideration of the Court's order granting summary judgment to all Defendants. R. Doc. 135. Notably, she has not pointed to any intervening changes in the law or to *new* evidence. *Henry*, 2016 WL3524107 at *2. Instead, Bonvillain argues that this Court committed "manifest error in fact" and that this manifest error in fact results in "manifest injustice." R. Doc. 145-1 at 9; R. Doc. 153. The Court disagrees.

First, Plaintiff asserts that the Court committed manifest error in fact because the evidence submitted on summary judgment demonstrates the existence of material factual disputes over Leone's credibility and the credibility of other pieces of evidence. *See* R. Doc. 145-1. To be clear, the Court did not make credibility determinations, for example, as to whether Leone told the truth in his deposition testimony. Instead, the Court conducted a broad, detailed survey of all evidence and issued an opinion explaining the competent summary judgment evidence submitted by Defendants and how much of it was not disputed by the evidence submitted by Plaintiff. Overall, the Court's Order & Reasons reflects the Court's search for any evidence that could allow it to draw an inference in Plaintiff's favor that Leone shot Verdin. R. Doc. 135 at 18-19. The Court could not find any evidence to allow it to do so. Bonvillain's arguments therefore do not describe a manifest error in fact resulting from the Court's order—they instead reveal her disagreement

---

[1] The Court noted in its Order & Reasons that "there may be some factual disputes about certain aspects of the autopsy and on-scene actions of Leone, but these factual disputes are not material to [Plaintiff's] excessive force claim." R. Doc. 135 at 18. It is possible that this evidence, as well as the other factual disputes Bonvillain references in her motion for reconsideration, could have been utilized by Bonvillain in demonstrating the existence of disputed material facts of her § 1983 conspiracy claim. However, Bonvillain did not submit competent evidence that a constitutional injury ever occurred to her son, so any discussion as to these aspects of the case could not be addressed by this Court.

5

with the Court's evaluation of the evidence, or absence thereof, presented to it on summary judgment.

Next, Plaintiff asserts that it would be manifestly unjust to dismiss all her claims because of the Court's failure to consider certain evidence in its assessment of whether Leone constitutionally injured her son. R. Docs. 145, 153. As Plaintiff points out, a court in this district recently addressed the manifest injustice standard in *Tijerino v. Miller*, finding that "[f]ew cases" discuss this standard, but that it is clear that meeting this standard is a "high hurdle; 'a showing of such requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.'" *Tijerino v. Miller*, No. 23-7391, 2025 WL 1411931, at *4 (E.D. La. May 15, 2025) (slip op.), *appeal filed*, No. 25-30306 (5th Cir. filed May 21, 2025) (quoting *In re Trevino*, 633 B.R. 485, 507 (Bankr. S.D. Tex. 2021)). She contends that the Court's opinion was fundamentally flawed because it failed to consider certain facts in its analysis of whether a constitutional injury occurred, including "[f]alse testimony of a law enforcement officer fleeing the scene of a traffic stop, loss of a USB drive containing surveillance video, loss of a projectile protruding from the victim's back, mysteriously appearing shell casings, ambulance cabcam video that contradicts eyewitness testimony, anomalies in crime scene photos of the truck's headliner, a sham investigation, an error-ridden autopsy[,] and a coverup of pubic records." R. Doc. 153 at 3. She contends that the Court's lack of consideration of this evidence results in manifest injustice.

The Court cannot find that Bonvillain made a showing that it would be manifestly unjust to allow this Court's summary judgment order to stand. *Tijerino*, 2025 WL 1411931, at *4. Much of the evidence that Bonvillain insists this Court ignored or disregarded on summary judgment was either determined to be irrelevant to the question of whether Leone shot her son or were

6

statements unsubstantiated by Plaintiff's submitted evidence. *See* R. Doc. 135 at 9 (discussing Leone's unrefuted deposition testimony about his duty and personal weapons); *id.* at 9-11 (discussing unrefuted body camera footage and testimony about on-scene actions of officers with respect to the shell casings on the truck's floorboard); *id.* at 15-18 (discussing the Court's plain observations from surveillance and ambulance cab camera footage and how Plaintiff produced nothing to refute the evidence that the footage corroborates); *id.* at 18-19 (discussing factual anomalies present in this case that were irrelevant to the inquiry of whether Leone shot Verdin). Therefore, Plaintiff's contentions as to manifest injustice reads more like a dissatisfaction with the Court's result, rather than her demonstrating that this "decision[,] without correction[,] would lead to a result that is both inequitable and not in line with applicable policy." *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-CV-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012).

Plaintiff has not shown what inequity would result from this Court determining that she did not meet her evidentiary burden on summary judgment. *See Hanover Ins. Co. v. Superior Labor Servs., Inc.*, No. 11-2375, 2017 WL 3582385, at *6 (E.D. La. Aug, 18, 2017) ("[The party] could have provided evidence in support of its oppositions to the motions to dismiss . . . . A party's erroneous strategical choices do not amount to manifest injustice."). Nor has she pointed to any policy concerns that would result from this Court's Order & Reasons. *See Jones v. Stephens*, 998 F. Supp. 2d 529, 536 (N.D. Tex. 2014) ("Granting the 59(e) motion would prevent a manifest injustice, namely, the denial of federal habeas review in a death penalty case because of the compounded errors of appointed counsel. Were this Court to deny Jones the opportunity to have his habeas petition heard at this point, he will have been subject to the errors of not one but three post-conviction attorneys. Equity should not tolerate these results, especially in a death-penalty case."). Accordingly, the Court cannot come to the determination that Plaintiff's motion for

reconsideration goes beyond merely requesting a rehashing of the evidence that has already been addressed in its Order & Reasons granting summary judgment. Motions for reconsideration are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon,* 891 F.2d at 1159).

## IV.    CONCLUSION

For the foregoing reasons;

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration, R. Doc. 145, is **DENIED**.

New Orleans, Louisiana this 2nd day of September, 2025.

_____
THE HONORABLE ELDON E. FALLON